J. BENNETT WHITE, P.C.
Post Office Box 7339
Tyler, Texas 75711
Telephone: 903-509-5000
Telecopier: 903-509-5094

J. BENNETT WHITE
State Bar No. 21309800

ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **CNOSSEN DAIRY** | § | Case No. 10-20760-rlj-11 |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND
REQUEST FOR FINAL HEARING THEREON**

TO THE HONORABLE JUDGE:

Cnossen Dairy, Debtor-in-Possession, file this Emergency Motion for Authority to Use Cash Collateral and Request for Final Hearing Thereon ("Motion") and would show the Court as follows:

**INTRODUCTION**

1. On November 12, 2010, Cnossen Dairy filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code. Cnossen Dairy remains in possession of the property and property of the Estate.

2. The Court has jurisdiction over this Motion pursuant to 11 U.S.C. §363, 28 U.S.C. §157(b)(2)(M), the proceedings being governed by Bankruptcy Rules 4001(b) and 9014.

## BACKGROUND

3. Cnossen Dairy operates a dairy ("the Dairy") near Hereford, Deaf Smith County, Texas. It consists of approximately 15,000 head of cattle, plus the fixtures and equipment and some of the land used in connection therewith.

## WELLS FARGO

4. The Cnossen Dairy's largest creditor and main lender is Wells Fargo Bank, N.A. ("Wells Fargo"). Cnossen Dairy's affiliates include the Cnossen Family Partnership ("*CFP*") and UC Farms, LLC ("*UC Farms*"). In addition to the indebtedness owed by Cnossen Dairy to Wells Fargo, Cnossen Dairy has guaranteed certain indebtednesses of both CFP and UC Farms to Wells Fargo. Likewise, CFP and UC Farms have guaranteed the indebtedness of Cnossen Dairy to Wells Fargo. In conjunction with these transactions, the parties have executed the following instruments:

    A. On or about January 3, 2007, Wells Fargo entered into a Credit Agreement with Cnossen Dairy as borrower, which the parties amended from time to time thereafter (as amended, the "*CD Credit Agreement*"). Pursuant to the terms of the CD Credit Agreement, Wells Fargo provided lines of credit and other financial accommodations to Cnossen Dairy in the aggregate original principal amount of $25,000,000 which were most recently evidenced by Revolving Line of Credit Notes dated April 1, 2009 and December 15, 2009 in the respective principal amounts of $8,000,000 and $15,000,000, and a Loan Commitment Note dated May 13, 2010 in the original principal amount of $2,000,000 (collectively, the "*CD Notes*").

B.    On or about March 28, 2007, Wells Fargo entered into a Credit Agreement with CFP as borrower (as amended, the "**CFP Credit Agreement**"). Pursuant to the CFP Credit Agreement, Wells Fargo made loans and extended other financial accommodations to CFP, which were most recently evidenced by a May 13, 2010 Loan Commitment Note in the original principal amount of $1,500,000 (the "**CFP Note**").

C.    On or about July 15, 2008, Wells Fargo entered into a Letter Credit Agreement with UC Farms as borrower (the "**UC Farms Credit Agreement**", and collectively with the CD Credit Agreement and the CFP Credit Agreement, the "**Credit Agreements**"). Pursuant to the UC Farms Credit Agreement, Wells Fargo provided lines of credit and other financial accommodations to UC Farms, most recently evidenced by a Revolving Line of Credit Note dated May 13, 2010 in the original principal amount of $442,217.34 (the "**UC Farms Note**", and collectively with the CD Notes and the CFP Note, the "**Notes**").

D.    In conjunction with the foregoing transactions, Cnossen Dairy, CFP, and UC Farms executed a series of continuing security agreements in favor of Wells Fargo that covered much of the personal and intangible property utilized and produced in connection with the dairy farming business, including rights to payment, farm products, livestock, crops, inventory, accounts, and the proceeds and products thereof. More specifically, Cnossen Dairy executed the following security agreements: (1) Continuing Security Agreement: Rights to Payment, (2) Security Agreement: Equipment, (3) Security Agreement: Livestock, and (4) Security Agreement: Crops (collectively, the "**CD Security Agreements**"). Paragraph 2 of each of the CD Security Agreements

provides for cross-collateralization of all present and future financial obligations owed by Cnossen Dairy to Wells Fargo.

E. Likewise, CFP executed a series of security agreements in favor of Wells Fargo to secure CFP's indebtedness under the CFP Credit Agreement and the CFP Note (collectively, the "*CFP Security Agreements*"). The CFP Security Agreements include: (1) Continuing Security Agreement: Inventory, (2) Security Agreement: Livestock, (3) Security Agreement: Crops, (4) Continuing Security Agreement: Rights to Payment and Inventory, and (5) Security Agreement: Equipment. Paragraph 2 of each of the CFP Security Agreements cross-collateralizes CFP's financial obligations and broadly secures all of CFP's present and future indebtedness to Wells Fargo.

F. Finally, UC Farms executed a series of security agreements in favor of Wells Fargo to secure UC Farms' indebtedness under the UC Farms Credit Agreement and UC Farms Note (collectively, the "*UC Farms Security Agreements*"). The UC Farms Security Agreements include: (1) Continuing Security Agreement: Rights to Payment and Inventory, and (2) Security Agreement: Equipment. Paragraph 2 of each of the UC Farms Security Agreements cross-collateralizes UC Farms' financial obligations and broadly secures all of UC Farms' present and future indebtedness to Wells Fargo.

G. Wells Fargo asserts a perfected security interests arising from the CD Security Agreements, CFP Security Agreements, and UC Farms Security Agreements (collectively, the "*Security Agreements*") by virtue of filed UCC-1 financing statements.

H. Cnossen Dairy executed two Continuing Guaranties in favor of Wells Fargo; one dated March 28, 2007 to secure the indebtedness of CFP up to the original principal

amount of the CFP Note—$1,500,000 plus interest, related costs, and collection fees, and a second dated July 15, 2008 to secure UC Farms' indebtedness up to $500,000 (collectively, the "*CD Guaranties*"). As continuing guaranties, the CD Guaranties apply to all past, present, and future indebtedness of CFP and UC Farms.

I. CFP likewise executed two Continuing Guaranties in favor of Wells Fargo; one dated December 15, 2009 to guarantee Cnossen Dairy's debts to Wells Fargo up to the sum of $25,000,000, and one dated July 15, 2008 to secure UC Farms' indebtedness up to $500,000 (collectively, the "*CFP Guaranties*"). Thus, under the CD Guaranties and the CFP Guaranties, each entity is liable for the other's indebtedness to Wells Fargo.

J. Further, UC Farms executed a Continuing Guaranty securing Cnossen Dairy's debt obligations to Wells Fargo up to $25,000,000 (the "*UC Farms Guaranty*"). The UC Farms Guaranty provides that UC Farms unconditionally guaranteed and promised to pay any and all of Cnossen Dairy's debts to Wells Fargo. The scope of the UC Farms Guaranty appears comprehensive, and "includes any and all advances, debts, obligations and liabilities of [Cnossen Dairy] … now or hereafter made…" up to the sum of $25,000,000. Taken together with the CD Guaranty of CFP's debt obligations, the broad scope of the UC Farms Guaranty arguably renders UC Farms liable for the total indebtedness of both Cnossen Dairy and CFP to Wells Fargo.

5. All loan obligations under the Notes matured on July 5, 2010. However, Wells Fargo extended the CD Notes and CFP Notes' maturity (but not the obligations of UC Farms) until September 5, 2010, at which time the Notes matured, and their terms were not subsequently extended. By letter dated November 2, 2010, Wells Fargo made demand for the aggregate amount of the obligations owing by Cnossen Dairy and CFP under the Credit Agreements and

the Notes, which Cnossen Dairy did not have funds on hand to pay. The UC Farms Note is the subject of a pending arbitration action.

6. Pursuant to the terms of the Credit Agreements, Notes, and Security Agreements, and the related guaranties of Debtor and certain non-debtor individuals and affiliates as joint-and-several obligors and borrowers, and Wells Fargo, as lender (such loan and security agreements are collectively hereafter referred to as the "***Pre-Petition Loan Agreements***" and such loan facilities are hereafter referred to as the "***Pre-Petition Loan Facilities***"), Wells Fargo asserts a perfected security interest in all, or substantially all, of the Debtor's farm products (including livestock, farm products, feed and the milk and other products thereof), equipment, accounts, commodity margin accounts, deposit accounts, chattel paper, instruments, promissory notes, documents, general intangibles, payment intangibles, software, letter of credit rights, healthcare insurance receivables and other rights to payment, inventory, work in process, warehouse receipts and other documents evidencing goods owned or acquired by the Debtor, and the proceeds of the foregoing, existing or later acquired (collectively, the "***Pre-Petition Collateral***") to secure all obligations owing to Wells Fargo under the Pre-Petition Loan Facilities and otherwise. The cash proceeds of the Pre-Petition Collateral owned by the Debtor of whatever kind or nature – including currency, drafts, electronic fund transfers and debits, checks, drafts and other cash equivalents – is referred to herein as the "***Cash Collateral***."

7. The Pre-Petition Loan Facilities provide the general working capital for the Debtor's and its affiliates' businesses. The outstanding amount of the Debtor's collective indebtedness to Wells Fargo is alleged to be at least the sum of approximately $21,616,713.64 as of the Petition Date (the "***Pre-Petition Indebtedness***"). Cnossen Dairy contends the aggregate fair market value of the Pre-Petition Collateral exceeds the amount of the Pre-Petition

Indebtedness.  The Debtor is not aware of any creditor other than Wells Fargo having an interest in the Debtor's Cash Collateral.  However, the Debtor does have other secured obligations to Hartford Life and Agri-Access secured by real estate and to certain equipment lenders.

8.    Cnossen Dairy was anticipating its monthly milk check to be deposited into its operating account on or about November 15, 2010.  Given the status of the Pre-Petition Indebtedness, Wells Fargo refused to provide adequate assurances that it would not offset the milk proceeds once deposited into the bank account.  The milk check was expected to exceed $1,000,000.00 and, without which, Cnossen Dairy would be unable to fund its monthly operating expenses.

**CONTINUED OPERATION OF THE DAIRY AND USE OF CASH COLLATERAL**

9.    This proceeding was initiated in to order to assure that the milk proceeds would not be taken by Wells Fargo.  On or about November 15, 2010, the milk check was deposited into Cnossen Dairy's operating account in the amount of approximately $1,250,000.00.  In conjunction with the Debtor-in-Possession's obligations, those funds are being transferred into the newly established debtor-in-possession account ("***DIP Account***").  Upon notice of Debtor's Chapter 11 filing, Wells Fargo instituted an administrative freeze of Debtor's operating account.  Although it has allowed some checks written post-petition to be paid, other checks have been returned without payment.

10.    Cnossen Dairy needs the immediate use of the milk proceeds in order to make payroll, to buy feed, and to also clear checks written to pay bills and which were issued on its account prior to the account being frozen by Wells Fargo.  Cnossen Dairy will continue to need the use of its future milk checks to continue the upkeep of its dairy operations.

11. Cnossen Dairy's assets, primarily in the form of milk cows, require the constant use of funds in order to retain their current value. Unless Debtor is able to utilize its revenue, its assets will rapidly deteriorate in value and its ongoing operations will be threatened.

12. Cnossen Dairy alleges that unless it is allowed the immediate use of Wells Fargo's cash collateral, they Dairy will suffer immediate and irreparable harm.

13. Prior to the filing of this Motion, the Debtor and Wells Fargo have negotiated toward an agreement for the use of cash collateral. Although some minor revisions remain to be made, attached is Exhibit A is a draft of an interim order for cash collateral usage that, in large part, reflects an agreement between the parties.

WHEREFORE PREMISES CONSIDERED, Cnossen Dairy prays that it be authorized the immediate use of cash collateral on an interim basis and on final hearing the permanent use of cash collateral as well as such other and further relief to which it may show it may justly be entitled.

RESPECTFULLY SUBMITTED,

J. BENNETT WHITE, P.C.
Post Office Box 7339
Tyler, Texas 75711
Telephone:    903-509-5000
Telecopier:    903-509-5094

_____
J. BENNETT WHITE
State Bar No. 21309800

ATTORNEYS FOR CNOSSEN DAIRY

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically. As such, this document was served on all interested parties deemed to have consented to electronic service. Pursuant to Fed. R. Bankr. P. 9013, Fed. R. Civ. P. 5, and Loc. R. Bankr. P. 9007-1(e), all other interested parties not deemed to have consented to electronic service were served with a true and correct copy of the foregoing, unless noted otherwise below, by first class mail on this date, **November 18, 2010**. Those served by means other than electronic are listed in the attached mailing matrix.

*/s/ J. Bennett White*

_____

J. BENNETT WHITE